IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| ABDULAKHRORBEK DADABAEV, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 6:26-CV-03036-BCW |
| ) | |
| CASS MARTIN, ) | |
| Sheriff, Ozark County Jail, et al., ) | |
| ) | |
| Respondents. ) | |

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Before the Court is Petitioner Abdulakhrorbek Dadabaev's Petition for Writ of Habeas Corpus. (Doc. #1). The Court, being duly advised of the premises, in consideration of the Petition and Respondents' brief (Doc. #7), grants the petition for habeas corpus relief as follows.

## BACKGROUND

On January 27, 2026, Petitioner Abdulakhrorbek Dadabaev, through counsel, filed the instant petition for writ of habeas corpus in this Court, alleging five claims: (I) violations of Dadabaev's substantive due process rights, 8 U.S.C. § 1231(a)(6), and Zadvydas v. Davis, 533 U.S. 678 (2001) because his removal is not reasonably foreseeable; (II) violation of Dadabaev's procedural due process rights because he is not being afforded any meaningful process in connection with attempts to remove him to a third country; (III) violation of the Due Process Clause of the Fifth Amendment for continued detention without a bond hearing or any individualized determination of flight risk or danger; (IV) violation of the Suspension Clause, U.S. Const. art I, § 9, cl. 2 on the basis of Dadabaev's detention without access to judicial review; and (V) attorneys' fees and costs under 28 U.S.C. § 2412. (Doc. #1).

1

Dadabaev is in the custody of the U.S. Department of Homeland Security ("DHS"), housed at the Ozark County Jail in Gainesville, Missouri. Dadabaev names the following Respondents in their respective official capacities: (1) Cass Martin, Sheriff of the Ozark County Jail; (2) Christopher Chamberlain, Director of the U.S. Immigration and Customs Enforcement ("ICE") Kansas City Field Office; (3) Todd M. Lyons, Acting Director of ICE; (4) Kristi Noem, Secretary of DHS; and (5) Pam Bondi, Attorney General of the United States (collectively, hereinafter, "the Government").

The Government's Response brief does not contest the facts alleged in the Petition. (Doc. #7). Rather, the Government generally asserts the Court lacks subject matter jurisdiction over Petitioner's claims, Petitioner is subject to mandatory detention, and the time constraints set forth in Zadvydas have not yet been reached. (Doc. #7). Nonetheless, in making these arguments and reserving the right to appeal, the Government acknowledges that this Court's recent decisions in Baca Hernandez v. Noem, No. 6:26-CV-03043-BCW (W.D. Mo. Feb. 4, 2026) and other cases "would control the result [in Dadabaev's case] if the Court adheres to that decision, as the dispositive facts are not materially distinguishable for purposes of the Court's decision over the legality of Dadabaev's detention." (Doc. #7). Thus, in the interests of conserving resources and expediting the Court's consideration of this case, the Government incorporates by reference the arguments relied on in Baca Hernandez "and agree[s] this Court can decide this issue without further briefing." (Doc. #7 at 3).

As set forth in the Petition, Dadabaev, a native of Kyrgyzstan and a citizen of Russia, entered the United States without inspection on October 1, 2023. Dadabaev was subsequently apprehended by immigration authorities and taken into ICE custody, where DHS initiated removal

proceedings against him. Dadabaev's requests for bond and parole during this detention were denied, and Dadabaev remained in ICE detention.

On May 17, 2024, Dadabaev appeared for an individual hearing before an Immigration Judge, who denied Dadabaev's application for asylum, but granted Dadabaev protection under the Convention Against Torture ("CAT")[1] with respect to Russia (Dadabaev's country of citizenship). (Doc. #1-1 at 11).The Immigration Judge thus ordered Dadabaev's removal to Kyrgyzstan (Dadabaev's country of birth). However, Kyrgyzstan subsequently certified in writing Dadabaev is not eligible for admission or repatriation there. (Doc. #1-5). DHS did not appeal within the 30-day period, and the Immigration Judge's removal order and simultaneous order for CAT protection became final.

In June 2024, Dadabaev filed a request for bond hearing. The Immigration Judge denied the bond request, finding a lack of jurisdiction and an alternative finding that Petitioner posed a flight risk.

In September 2024, ICE released Dadabaev from custody under an Order of Supervision ("OSUP") with an electronic ankle monitor. (Doc. #1-1 at 18-22). Dadabaev then relocated to Illinois, where he began working lawfully pursuant to his employment authorization.

On July 2, 2025, the ICE Field Office in Chicago called Dadabaev and informed him his ankle monitor would be removed, and Petitioner should report to the ICE Field Office for that purpose. When Dadabaev came to the ICE Field Office as directed, ICE officers detained him without providing any justification.

---

[1] To obtain CAT protection, a noncitizen must establish it is more likely than not that he would be subject to torture if removed to the proposed country of removal. 8 C.F.R. § 1208.16(c)(2). This standard requires a greater showing of risk than that required to establish eligibility for asylum based on persecution. See id.

Dadabaev alleges he is currently detained under 8 U.S.C. § 1231, which governs the detention of noncitizens subject to a final order of removal. Dadabaev is subject to a final order of removal, with a simultaneously granted application for CAT protection, which withholds or defers removal.

CAT protection may be terminated only upon a showing that the individual no longer faces a likelihood of torture. To make this showing, DHS must move to reopen proceedings against Dadabaev. If an Immigration Judge grants DHS's request to reopen, Petitioner is entitled to notice of the time, date, and location of the termination hearing, as well as notice of the Petitioner's right to provide additional evidence in support of the CAT application within certain time. 8 C.F.R. §§ 208.17(d)(2).

Based on the foregoing, Dadabaev seeks a writ of habeas corpus against his continued detention under § 1231.

On January 28, 2026, this Court issued an Order to Show Cause why the relief sought in Dadabaev's petition for habeas relief should not be granted. (Doc. #4). The Order to Show Cause set a responsive deadline for February 3, 2026, and on this deadline, the Government filed an extension motion seeking leave to respond by February 6, 2026. Though the Court did not grant such leave, the Government responded to the Order to Show Cause on February 6, 2026, and the Court considered the Government's responsive brief. (Doc. #7).

**LEGAL STANDARD**

A person detained by the Government may challenge the legality of the confinement through a petition for writ of habeas corpus, including an individual challenging detention relating to immigration proceedings. Preiser v. Rodriguez, 411 U.S. 475, 485 (1973); Zadvydas v. Davis, 533 U.S. 678, 687 (2003); Roble v. Bondi, 803 F. Supp. 3d 766, 770 (D. Minn. 2025). The

petitioner "bears the ultimate burden of showing that his detention violates the law." Yee S. v. Bondi, -- F. Supp. 3d --, 2025 WL 2879479, at *4 (D. Minn. Oct. 9, 2025) (citing Copenhaver v. Bennett, 355 F.2d 417, 422 (8th Cir. 1966)). But 8 C.F.R. § 241.13(i)(2) requires Respondents "to establish that 'changed circumstances' justified the revocation of release." Id. "The regulation reflects the general principle that the burden of proof falls on the party seeking to change the present state of affairs." Phongsavanh, 2025 WL 3124032, at *2 (citing Roble, 803 F. Supp. 3d at 772-73).

## ANALYSIS

The dispositive issue for Dadabaev's petition is whether Respondents violated DHS regulations when ICE re-detained, and continues to detain, Dadabaev without notice and an opportunity to be heard.

The Government's ability to detain, release, and revoke the release of aliens subject to removal orders is governed by the INA and specific regulations. The INA provides a default 90-day removal period during which the Government must remove the alien from the United States. 8 U.S.C. § 1231(a)(1). During that 90-day period, the alien must be detained. 8 U.S.C. § 1231(a)(2).

If not removed during that 90-day period, the Government generally must release the alien from detention "subject to supervision." 8 U.S.C § 1231(a)(3). Such supervision may include requirements for periodic check-ins with an immigration officer, for necessary medical examinations, to provide information about work or family, and to comply with reasonable restrictions on conduct. Phongsavanh, 2025 WL 3124032, at *2 (citing Zadvydas, 533 U.S. at 688-89, 701).

The Government may revoke an OSUP and re-detain the alien under certain circumstances. 8 C.F.R § 241.4(*l*). The re-detention of an alien on supervised release is governed by 8 C.F.R. § 241.13(i). Phongsavanh, 2025 WL 3124032, at *3 (citing Kong v. United States, 62 F.4th 608, 619-20 (1st Cir. 2023)). The Government may revoke an OSUP if (1) the alien violates a condition of release; or (2) "on account of changed circumstances, the [Government] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i).

The regulation additionally outlines the procedures the Government must follow to revoke an alien's OSUP. First, the Government must provide the alien notice of the reasons for the revocation. Id. at § 241.13(i)(3). Second, the Government will conduct an initial informal interview to allow the alien an opportunity to respond to the notice and present evidence to show "there is no significant likelihood he or she [will] be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." Id.

Before considering the merits of Dadabaev's petition, the Court first addresses Respondents' challenge to the Court's jurisdiction. Respondents, incorporating by reference their responsive brief in Baca Hernandez, argue the Court lacks jurisdiction under 8 U.S.C. § 1252(g). No. 6:26-CV-03043-BCW, Doc. #4.

**A. The Court has jurisdiction over Dadabaev's petition.**

Respondents argue this Court lacks jurisdiction to consider Dadabaev's claims under 8 U.S.C. § 1252(g). Section 1252(g) provides that no court has jurisdiction under any statutory provisions (including 28 U.S.C. § 2241) "to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien . . . ." 8 U.S.C. § 1252(g). The Supreme Court

has interpreted § 1252(g) narrowly. Dep't of Homeland Sec. v. Regents of the Univ. of Ca., 591 U.S. 1, 19 (2020).

In this case, Dadabaev does not challenge the underlying order of removal. Rather, he challenges his re-detention after his release pursuant to an OSUP and despite the final order for CAT protection such that his removal is not reasonably foreseeable.

The Supreme Court held in Zadvydas that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention." 533 U.S. at 688. Citing Zadvydas, courts across the country have asserted jurisdiction over challenges to ICE re-detentions, including re-detentions under similar circumstances to those presented here. See Hasiholan v. Zoley, No. 5:25-cv-03196 AH (DSR), 2026 WL 263645, at *3 (C.D. Cal. Jan. 30, 2026) (collecting cases). Section 1252(g) does not deprive this Court of jurisdiction.

Further, the case cited by Respondents is inapposite. In Tazu v. Attorney General United States, the petitioner had notice of the reasons for his re-detention (removal), had an opportunity to be heard, and had exhausted all avenues to stay in the country legally. 975 F.3d 292 (3d Cir. 2020). And the Government had all documents necessary to remove the petitioner and re-detained him to execute the removal order. Id. Here, the facts are distinguishable. In addition to not providing Dadabaev with notice and an opportunity to respond, Respondents have not provided any evidence supporting that the re-detention of Dadabaev was to remove him or that there is a "significant likelihood that [Dadabaev] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i). As such, Tazu does not persuade the Court that it lacks jurisdiction.

The Court thus turns to the merits of Dadabaev's petition for habeas relief.

## B. Habeas relief is appropriate because the Government did not follow its own regulations when re-detaining Dadabaev.

Respondents argue the Government has the discretion to revoke Dadabaev's OSUP under statutory and regulatory provisions. Dadabaev does not challenge **whether** the Government may revoke his OSUP. Rather, he argues, among other things, that the Government did not follow its own regulatory procedures when it revoked his OSUP and re-detained him and, pursuant to those regulations, he was entitled to notice and an opportunity to be heard before re-detention.

Here, Dadabaev was re-detained without notice and without an initial informal interview as required by 8 C.F.R. § 241.13(i)(3). Dadabaev asserts his OSUP was terminated and he was detained without justification or explanation when he went to the ICE Field Office upon request in July 2025. The Government's responsive brief provides no justification, explanation, or argument for why the OSUP was terminated or for whether proper procedures were followed, and the Court does not otherwise find an explanation in the record.

The Government does not assert Dadabaev violated the conditions of the OSUP or shown evidence of changed circumstances justifying revocation of the OSUP. Yee S., 2025 WL 2879479, at *4. There is no discernable reason why Dadabaev was re-detained and/or why he continues to be detained.

"District courts nationwide have consistently granted habeas relief to similarly situated petitioners, even in cases where the Government provided much stronger evidence to support revocation of supervision than it did here." Phongsavanh, 2025 WL 3124032, at *4 (collecting cases). The Court sees no reason to depart from the well-reasoned analyses in those cases. Accordingly, it is hereby

ORDERED Petitioner Abdulakhrorbek Dadabaev's Petition for Writ of Habeas Corpus (Doc. #1) is GRANTED. It is further

ORDERED Respondents shall release Petitioner immediately, no later than 10:00 a.m. CT on February 8, 2026, subject to and in accordance with the conditions of the preexisting Order of Supervision. It is further

ORDERED no later than 10:00 a.m. CT on February 9, 2026, counsel for Respondents shall provide a declaration pursuant to 28 U.S.C. § 1746 affirming that Petitioner was released from custody in accordance with this Order. It is further

ORDERED Petitioner's request for attorney's fees is GRANTED. Within 10 days of the date of this Order, counsel shall file a separate and independent motion for attorney's fees, accompanied by detailed billing records supporting a reasonable fee request for time reasonably expended in preparation of the habeas corpus petition.

IT IS SO ORDERED.


Date: February 7, 2026 /s/ Brian C. Wimes
BRIAN C. WIMES, CHIEF JUDGE
UNITED STATES DISTRICT COURT